NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

| | | |
|---|---|---|
| MILTON ASHLEY, | : | |
| | : | |
| Petitioner-Plaintiff | : | |
| | : | Civil Action No. 04-CV-1579 (JLL) |
| v. | : | |
| | : | |
| THOMAS RIDGE, Secretary, Department of Homeland Security; MICHAEL J. GARCIA, Assistant Secretary (designee), U.S. Immigration and Customs Enforcement; MATTHEW JACK, Interim Newark District Director for Interior Enforcement, U.S. Immigration and Customs Enforcement; DEPARTMENT OF HOMELAND SECURITY; U.S. IMMIGRATION and CUSTOMS ENFORCEMENT, | : : : : : : : : : | OPINION  LINARES, District Judge |
| | : | |
| Respondent-Defendants. | : | |
| | : | |

_____

**INTRODUCTION**

This matter is before the Court on the petition for a writ of habeas corpus by petitioner-plaintiff Milton Ashley. The Court has considered the submissions in support of and in opposition to the Petition. There was no oral argument. See Fed. R. Civ. P. 78. For the reasons set forth below, Counts Two and Three of the Petition are dismissed for want of jurisdiction under Bakhtriger v. Elwood, 360 F.3d 414 (3d Cir. 2004), and Counts One and Four are denied on the merits.

1

## BACKGROUND

Petitioner Milton Ashley is a casualty of "Operation Predator," the highly publicized effort by the Department of Homeland Security ("DHS") to round up and deport criminal alien sex offenders pursuant to Section 237(a)(2)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(A). On August 6, 2003, petitioner was arrested at his home in Montclair, New Jersey and thereafter detained at the Hudson County Correctional Facility in Kearny, New Jersey. Petitioner's arrest was effected on the basis of a 1995 felony conviction for sexual assault upon a minor, his twelve-year-old niece. That conviction rendered him deportable.

The Immigration and Naturalization Service ("INS")[1] served petitioner with a Notice to Appear ("NTA"), which indicated the commencement of removal proceedings against him. In a hearing before an Immigration Judge ("IJ"), petitioner conceded his deportability but sought a waiver under Section 212(c) of the INA. (In the Matter of Ashley, No. A90-579-180, Garcy, I.J., Op. of 11/3/03, at 2 ("IJ Op.").) The IJ granted such relief, reasoning that, because petitioner's family ties were strong, he was a responsible person and excellent worker, he supported his wife and children financially, he was a "steady taxpayer," and he had little family outside the United States, petitioner had demonstrated "unusual or outstanding equities" sufficient to overcome his admittedly "vile and depraved" crime several years earlier. (IJ Op. at 5-11.) The IJ moreover found that petitioner had exhibited "true rehabilitation." (Id. at 11.) Although the IJ expressed confusion over the fact that "the sentencing documents state[d] that [petitioner] was supposed to have gone to psychological counseling," which petitioner did not do, the IJ ultimately believed

---

[1]The INS has since been absorbed into the Department of Homeland Security ("DHS") and is now called the Bureau of Citizenship and Immigration Services. Borges v. Gonzalez, 402 F.3d 398, 401 n.1 (3d Cir. 2005).

petitioner's representation that no such counseling was in fact required, reasoning that petitioner never apparently violated the terms of his probation.  (Id. at 14.)

The Board of Immigration Appeals ("BIA" or "Board") reversed.  (In the Matter of Ashley, No. A90-579-180, Hess Op. of 3/18/04 ("BIA Op.").)  Without expressly overruling the IJ's factual determinations, the BIA arrived at the opposite conclusion concerning the balancing of the equities with the seriousness of the crime.  (BIA Op. at 3.)  It determined that the nature of a sexual offense against a child ultimately weighed too heavily against petitioner's admittedly "noteworthy" equities.  (Id. at 2-3.)  The BIA further noted that petitioner's failure to undergo rehabilitative therapy, even though counseling appeared to be an intended part of his sentence, was "worrisome."  (Id. at 3.)  Petitioner was ordered removed to his native Jamaica.

On or about April 6, 2004, petitioner filed this action, which he fashions a "Verified Petition for a Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief."[2]  The Petition contains four counts.  Count One alleges that the BIA's use of de novo review deprived petitioner of due process, because the Board supposedly overturned the IJ's factual finding that petitioner was rehabilitated.  (Pet. ¶¶ 60-77.)  Count Two also alleges that the BIA's use of de novo review violated his due process rights, on the grounds that such review rendered the IJ's decision meaningless.  (Pet. ¶¶ 78-87.)  Count Three alleges that the BIA violated due process, because it failed to follow precedent, and, contrary to its ruling on petitioner's bail appeal, where

---

[2]For reasons discussed in detail below, petitioner's only source of potential relief from the Board's action is traditional habeas relief.  See Bakhtriger v. Elwood, 360 F.3d 414, 418 (3d Cir. 2004).  Consequently, the Court will refer to this petition-complaint as "Petition."

it supposedly held that petitioner was rehabilitated,[3] the BIA irrationally held the opposite when overturning the IJ. (Pet. ¶¶ 88-104.) Count Four alleges that the BIA was a biased adjudicatory body, because the Attorney General reduced its size from twenty-three to eleven members, eliminating those members he disagreed with, and because the Attorney General has placed undue pressure on the Board to deny relief to aliens. (Pet. ¶¶ 105-118.)

Respondents oppose the Petition on the grounds that this Court lacks subject matter jurisdiction to review BIA determinations, and that, in the alternative, the Petition is meritless. The Court will first set forth the applicable law and then apply that law to each Count in the Petition.

## DISCUSSION

I.   *Applicable Law*

   A.   The Statutory Framework

As discussed, petitioner pled guilty in 1995 to Endangering the Welfare of a Child in the Third Degree, N.J.S.A. § 2C:24-4(a). This conviction rendered him deportable. 8 U.S.C. § 1227(a)(2)(A)(iii).

Under former INA Section 212(c), deportable aliens could seek a waiver of deportation from the Attorney General. That statute provided: "Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation,

---

[3] An IJ had released petitioner on $5,000 bond, but DHS appealed on the grounds that petitioner was a danger to the community and a flight risk. The Board dismissed the appeal, finding that, inter alia, petitioner's "steps toward rehabilitation" supported the IJ's favorable exercise of discretion in determining that petitioner was not a flight risk. (In the Matter of Ashley, No. A90-579-180, Osuna Op. of 11/4/03, at 3 ("Osuna Op.").)

and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General ... ." 8 U.S.C. § 1182(c) (repealed 1996). While the plain language of Section 212(c) applied only to aliens seeking readmission into the United States, it was construed to apply also to aliens fighting deportation. See, e.g., Gonzalez v. INS, 996 F.2d 804, 806 (6th Cir. 1993). Section 304(b) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), 110 Stat. 3009-597, repealed INA Section 212(c). Nevertheless, because petitioner's guilty plea preceded IIRIRA, he remained eligible for discretionary waiver under Section 212(c). See INS v. St. Cyr, 533 U.S. 289, 314-16 (2001). His application was thus considered.

Once the Board denied petitioner's Section 212(c) application and ordered him deported, however, petitioner's available sources of relief in federal court were quite limited. Specifically, as a criminal alien convicted of an aggravated felony, petitioner had no entitlement to appeal the BIA's ruling to the Third Circuit.[4] See 8 U.S.C. § 1252(a)(2)(C). To the contrary, his sole avenue of relief was under the traditional habeas statute. Bakhtriger v. Elwood, 360 F.3d 414, 418 (3d Cir. 2004). That statute, 28 U.S.C. § 2241(c), provides in relevant part: "The writ of habeas corpus shall not extend to a prisoner unless – ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... ."

  B.  Scope of *Habeas* Review Under *Bakhtriger* and Interpretive Case Law

The scope of the habeas review available to criminal aliens such as petitioner has been the subject of considerable case law, but the Third Circuit's opinion in Bakhtriger provides the

---

[4]Appeals of Board rulings may be heard only by the courts of appeals. See 8 U.S.C. §§ 1252(a)(1), (b)(9).

general framework of the analysis.  In <u>Bakhtriger</u>, an IJ had granted the petitioner's application for asylum on the discretionary grounds that, notwithstanding the absence of a well-founded fear of persecution in his home country of Moldova, the petitioner had demonstrated compelling reasons for his unwillingness to return arising out of the severity of his past persecution.  360 F.3d at 416.  The BIA reversed, finding that the past persecution did not rise to the level found in previous cases warranting a favorable exercise of discretion, and it ordered petitioner deported.  <u>Id.</u>  The petitioner challenged his deportation through § 2241, arguing that "the factual record did not support the finding by both the IJ and the BIA that there was no well-founded fear of future persecution because conditions in Moldova [had] changed."  <u>Id.</u> at 417.  He also claimed that the Board "wrongly determined that he was not entitled to asylum on a discretionary basis."  <u>Id.</u> (internal quotes and citation omitted).  The district court, finding the petitioner sought review of a discretionary determination by the IJ and BIA, dismissed the petition for lack of subject matter jurisdiction.  <u>Id.</u>  The Third Circuit affirmed.

The court, performing an exhaustive review of the history of the writ in the immigration context, held that, "under section 2241, habeas proceedings do not embrace review of the exercise of discretion, or the sufficiency of the evidence."  <u>Id.</u> at 421.  Instead, <u>Bakhtriger</u> held, "the scope of review under section 2241 must be confined to questions of constitutional and statutory law."  <u>Id.</u> at 424.  The court declined, however, to "delineate the precise boundaries between permitted review of legal questions and forbidden review of factual issues or matters of discretion ... ."  <u>Id.</u> at 425.

While <u>Bakhtriger</u> expressly limits review under § 2241 to issues of "constitutional and statutory law," it would appear that <u>habeas</u> jurisdiction extends to questions of regulatory law as

well.  See United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 267-68 (1954) (holding that habeas petition was dismissed in error because it alleged violations of "existing valid regulations"); Chew v. Colding, 344 U.S. 590, 603 (1953) (reversing lower courts' dismissal of writ on the grounds that the Attorney General had no power under the authorizing regulation to act as he did); Ogbudimkpa v. Ashcroft, 342 F.3d 207, 222 (3d Cir. 2003) (holding that district court had habeas jurisdiction over claim that IJ misapplied regulations to facts of the case); Chong v. District Director, INS, 264 F.3d 378, 388-90 (3d Cir. 2001) (reviewing BIA's alleged violation of INS regulations); Sandoval v. Reno, 166 F.3d 225, 238 (3d Cir. 1999) (holding that statutory claim was cognizable in habeas proceeding and citing Accardi's language on regulatory review for support); Builes v. Nye, 239 F. Supp. 2d 518, 523 (M.D. Pa. 2003).  Mindful therefore that its jurisdiction over Board rulings extends only to questions of constitutional, statutory, and regulatory law, the Court now turns to petitioner's claims.

II.     *Petitioner's Claims*

    A.     Jurisdiction

        1.     Due Process Violations

Preliminarily, the Court addresses petitioner's blanket characterization of Counts One through Four as "due process" claims.  In determining whether subject matter jurisdiction lies, this Court is not bound by the labels petitioner assigns his claims.  See Ramirez-Alejandre v. Ashcroft, 276 F.3d 517, 519-20, 521 (9th Cir. 2002) (dismissing petition on jurisdictional grounds for failure to allege a "colorable" due process claim); cf. Bakhtriger, 360 F.3d at 425 (rejecting petitioner's attempt to "repackage" his abuse-of-discretion claims as legal claims). That petitioner seeks habeas relief under the "Due Process Clause" is no more relevant to the

jurisdictional analysis than if he had sought relief under, say, the Appointments Clause. To the contrary, this Court must analyze whether Counts One through Four set forth allegations sufficient to support a violation of due process.

Fifth Amendment due process claims are generally of two varieties, to wit, "substantive" and "procedural." With respect to the former, the substantive element of the Due Process Clause "prevents the government from engaging in conduct that shocks the conscience, or interferes with rights implicit in the concept of ordered liberty." United States v. Salerno, 481 U.S. 739, 746 (1987) (internal quotes and citations omitted). To state a claim for deprivation of substantive due process, petitioner must allege that he was denied a protected liberty interest by arbitrary or capricious government action. See Sameric Corp. of Del. v. City of Philadelphia, 142 F.3d 582, 590 (3d Cir. 1998).

Here, Petitioner has alleged neither the existence of a protected right nor sufficiently arbitrary or capricious action by the Board. First, this action involves the impending deportation of a statutorily removable alien. Petitioner enjoys no right to a favorable exercise of discretion concerning his waiver application. See 8 U.S.C. § 1227(a) (prescribing conditions that render alien deportable); 8 U.S.C. § 1182(c) (repealed 1996) (conferring broad discretion on Attorney General to admit an otherwise excludable alien); Jay v. Boyd, 351 U.S. 345, 354 (1956) (finding that suspension of deportation "is manifestly not a matter of right under any circumstances, but rather is in all cases a matter of grace"); Munoz v. Ashcroft, 339 F.3d 950, 954 (9th Cir. 2003) ("Since discretionary relief is a privilege created by Congress, denial of such relief cannot violate a substantive interest protected by the Due Process clause."). "In the immigration context, courts have 'long recognized the power to expel or exclude aliens as a fundamental sovereign attribute

8

exercised by the Government's political departments largely immune from judicial control.'" Munoz, 339 F.3d at 954 (quoting Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 210 (1953)). Consequently, there is no cognizable liberty interest at stake sufficient to trigger the substantive protections of the Fifth Amendment.

      Second, petitioner has failed to allege sufficiently arbitrary behavior. When the challenged government action is a specific executive act, rather than legislation, "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998) (quoting Collins v. Harker Heights, 503 U.S. 115, 129 (1992)). Indeed, as mentioned, government conduct is only constitutionally infirm in this regard if it is "conscience-shocking." Id. None of petitioner's allegations involve agency behavior that even approaches the flagrantly obdurate and egregiously arbitrary actions necessary to constitute violations of substantive due process. See, e.g., Rochin, 342 U.S. at 172 (holding that the forced pumping of a suspect's stomach to procure evidence against him was sufficiently shocking to the conscience to violate due process); Temkin v. Frederick County Comm'rs, 945 F.2d 716, 723 (4th Cir. 1991) (holding that police officer's particularly reckless high-speed chase of a misdemeanant that resulted in serious injury to an innocent third party did not shock the conscience such that it violated substantive due process). Instead, the Petition sets forth grievances that are more in the nature of an appeal of the Board's ruling than anything else. As a result, petitioner has asserted no colorable substantive due process claims.

      With respect to the second variety of due process claims, it is established that aliens facing deportation are entitled to procedural due process. Chong, 264 F.3d at 386. This entails "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Id. (quoting

9

Mathews v. Eldridge, 424 U.S. 319, 333 (1976)). In the present context (i.e., deportation proceedings) a petitioner is afforded such a meaningful opportunity when (1) the IJ or Board makes findings of fact on the basis of a record before it, which record is disclosed to the petitioner; (2) the petitioner is permitted to make arguments on his own behalf; and (3) the IJ or Board renders an "individualized determination" of the petitioner's interests. Id. (citing Abdulai v. Ashcroft, 239 F.3d 542, 549 (3d Cir. 2001)). Moreover, procedural due process entitles petitioner to impartial decision-making. Abdulrahman v. Ashcroft, 330 F.3d 587, 596 (3d Cir. 2003) (quoting Schweiker v. McClure, 456 U.S. 188, 195 (1982)).

The Court concludes that the Petition fails to allege in Counts One through Three a deprivation of procedural due process. These claims set forth grievances with the result of procedures that were otherwise proper. That result, it is alleged, was flawed not because certain procedures were denied, but because the Board allegedly applied an improper standard of review (Counts One and Two) and failed to follow its own precedent (Count Three). Accordingly, there is no jurisdictional basis to review the substance of these claims on procedural due process grounds.

Count Four, however, alleges bias on the part of the Board. (Pet. ¶¶ 105-18.) Specifically, petitioner alleges that, inter alia, "[t]he Attorney General has utilized the certification process to criticize Board members, to disregard the law, and to pressure Board members into not following the law." (Pet. ¶ 111.) Because the impartiality of a quasi-judicial decision-maker is a due process requirement,[5] Abdulrahman, 330 F.3d at 596, and because the Attorney General, notwithstanding his unfettered discretion in this area, may not "sidestep"

---

[5]Board impartiality is also a regulatory requirement. See 8 C.F.R. § 1003.1(d)(1).

10

otherwise valid regulations, Accardi, 347 U.S. at 267, petitioner's allegations in Count Four are within the purview of this Court's jurisdiction on a habeas petition. The Court will address the merits of this claim below.

          2.      Violations of Existing, Valid Regulations

While the Petition, with the exception of Count Four, fails to allege colorable due process claims, the Court must consider whether the Petition, irrespective of petitioner's characterization of his claims, alleges violations of valid INS regulations. See Ogbudimpka, 342 F.3d at 222 (holding that district courts have habeas jurisdiction over misapplication of regulations). Petitioner is not entitled to review of his allegations simply because he has labeled these "due process" claims, but neither should he be rigidly held to these labels in the event that he has in fact alleged violations of federal, rather than constitutional, law.

As discussed, Count One alleges in part that the Board improperly engaged in de novo review of the IJ's factual finding that petitioner had been rehabilitated. (Pet. ¶¶ 63, 68-69, 74-77.) The BIA is empowered to review factual findings by an IJ only under a "clearly erroneous" standard. 8 C.F.R. § 1003.1(d)(3)(i). Petitioner's claim in this regard therefore challenges the Board's application of law, not its exercise of discretion. See Chong, 264 F.3d at 388-90 (reviewing petitioner's allegations of violations of INS regulations). Accordingly, the Court has jurisdiction to consider Count One.

Count Two alleges that the Board's de novo review rendered the IJ's decision meaningless. (Pet. ¶¶ 78-87.) Petitioner faults the BIA for failing to "identify any clear errors in the IJ's decision" (Pet. ¶ 80), for issuing an "[in]sufficiently detailed" and "boilerplate" decision (Pet. ¶ 81), and for declining to explain "why [his] family should be punished by his deportation"

11

(Pet. ¶ 84). The overall tenor of his claim is, in effect, a disagreement with the Board over whether his equities outweigh his crime. Petitioner's argument thus attacks the exercise of discretion. As such, the Court does not have jurisdiction to consider the merits of Count Two. See Bakhtriger, 360 F.3d at 424-25.

Count Three alleges that the BIA failed to follow precedent by irrationally ignoring its prior finding of rehabilitation during the contest concerning petitioner's bail. (Pet. ¶¶ 88-104.) Petitioner further claims that the Board misapplied its past decisions to the facts of his case. (Pet. ¶¶ 96-103.) These allegations raise questions of the BIA's discretion, not of law. Petitioner points to no statute or regulation concerning the Board's application of principles of stare decisis and the like.[6] Indeed, Count Three's allegations are strikingly similar to those rejected on jurisdictional grounds in Bakhtriger – namely, allegations that the facts of petitioner's case are distinct from those of other deported aliens and that petitioner is being "treated differently from other aliens similarly situated." See 360 F.3d at 425 (internal citation and quotes omitted). Were this Court to consider claims of "misapplication of BIA precedent" as justiciable questions of

---

[6]The regulation concerning the Board's powers provides that "[t]he Board shall be governed by the provisions and limitations prescribed by applicable law, regulations, and procedures, and by decisions of the Attorney General (through review of a decision of the Board, by written order, or by determination and ruling pursuant to section 103 of the Act)." 8 C.F.R. § 1003.1(d)(1)(i). With respect to its own precedent, the Board is bound only by decisions so selected "[b]y majority vote of the permanent Board members," and it is otherwise free to overturn prior decisions. § 1003.1(g). It is not surprising that these regulations do not impose the doctrine of precedent upon the BIA as a legal mandate unless that body so chooses to be bound. As a general matter, stare decisis functions as a rule of law when an inferior judicial entity is called upon to apply the past decisions of a superior one – for example, the Board is "governed" by decisions of its superior, the Attorney General, see § 1003.1(d)(1)(i) – but "[w]hen the prior court is the same as the subsequent court, the general rule is that precedent is not binding, even though a court may give great weight to its own prior decisions." 18 James Wm. Moore Et Al., Moore's Federal Practice ¶ 134.02[1][a].

pure law under Bakhtriger, it would in essence be gutting Congress' proscription of judicial review for criminal aliens subject to a final order of deportation, see 8 U.S.C. § 1252(a)(2)(C), because any Board decision that relies upon, cites to, or even arguably is implicitly guided by prior rulings (i.e., every BIA determination) would become ipso facto reviewable under the habeas statute. This Court lacks jurisdiction to address the merits of Count Three.

3.     Summary of Jurisdictional Issues

To recapitulate, petitioner has failed to allege in Counts One through Three colorable due process claims, thereby depriving this Court of jurisdiction to review these constitutional challenges to the Board's actions. See Ramirez-Alejandre, 276 F.3d at 519. Petitioner has, however, alleged in Count Four sufficient facts to support a procedural due process violation, insofar as he claims that the Board was not impartial and was unduly influenced by the Attorney General to disregard regulations. See Accardi, 347 U.S. at 267; Abdulrahman, 330 F.3d at 596.

With respect to the allegations of regulatory violations, petitioner has sufficiently alleged in Count One a deprivation of his procedural rights under 8 C.F.R. § 1003.1(d)(3), which provides for de novo review of IJ decisions only with respect to questions of law, not questions of fact. Counts Two and Three, however, are effectively challenges to the Board's discretion and therefore non-justiciable. See Bakhtriger, 360 F.3d at 425.

Consequently, Counts Two and Three are dismissed for lack of jurisdiction under the habeas statute. The Court now addresses the merits of petitioner's regulation-based allegations under Count One and his constitutional allegations under Count Four.

B.     Merits

        1.      Count One: Improper <u>De</u> <u>Novo</u> Review of the IJ's Findings Concerning Rehabilitation

The gravamen of Count One is that the Board effectively overturned the IJ's factual determination that petitioner had been rehabilitated without making a finding, as required, that the IJ committed a clear error. <u>See</u> 8 C.F.R. § 1003.1(d)(3). This allegation is without merit.

The reasoning of the Board which petitioner finds so objectionable is set forth as follows in its entirety:

> As the Immigration Judge noted, the respondent fully complied with the terms of his probation and has been living in the United States without further incident since completing his sentence. The respondent has also complied with the registration requirements under Megan's Law. We recognize that respondent has been forthcoming about his offense and has taken responsibility for his actions; he has not tried to blame the victim or otherwise justify his conduct. The respondent testified that he apologized to the victim's mother and has had no contact with the victim since his conviction. We regret, however, that the respondent received no therapy during or following his probation. (I.J. at 14; Tr. at 94). It appears that counseling was intended to be part of his sentence, but for reasons unknown, he never received it. Although DHS has not raised the issue of rehabilitation on appeal, the fact that the respondent has not undergone any type of rehabilitative therapy in the years following his conviction is worrisome.
>
> The "extremely serious nature" of the respondent's crime weighs heavily against him. <u>See</u> <u>Matter of Mendez-Moralez</u>, 21 I&N Dec. 296, 305 (BIA 1996) (finding that respondent had not met burden of establishing that relief is warranted in an exercise of discretion when considering, against the equities, the nature of a sexual offense against a child). We find that the negative factors of the respondent's case outweigh the positive equities and that the respondent has not met his burden of establishing that a discretionary grant of section 212(c) relief is warranted in his case.

(BIA Op. at 3 (internal citations generally omitted).)

There is little in the Board's language that could be interpreted as disturbing the IJ's factual finding on rehabilitation. The Board instead appears simply to have accorded less <u>weight</u> to the IJ's rehabilitation finding. That is, in balancing the "despicable nature of respondent's

criminal conviction" with his positive attributes exhibited since, the BIA assigned more significance to the seriousness of petitioner's crime than did the IJ, and less significance to petitioner's equities, including his rehabilitation, than did the IJ.[7] (Id. at 2-3.)

As there is no statute or regulation restricting the considerations upon which the IJ or Board may rely in exercising their discretion, other than the residency requirements, see 8 U.S.C. § 1182(c) (repealed 1996), the Board must be entitled to arrive at different conclusions than the IJ from the same set of undisputed facts.  Cf. Jay, 351 U.S. at 353-54 (noting that Attorney General is not bound by any statutory legal standard in exercising his discretion); Ogbudimkpa, 342 F.3d at 222 (holding that district court had jurisdiction over claim that BIA wrongly applied standard of relief to undisputed facts on the record).  A priori, the Board's discretion entitles it to become "worri[ed]" by the settled fact that an alien convicted of sexually assaulting a twelve-year-old failed to undergo psychological counseling, and to factor that concern into its discretionary calculus.  Petitioner's request for relief under Count One is denied.

      2.      Count Four: Board Bias and Undue Influence by the Attorney General

Petitioner's remaining justiciable allegation is that the Board was biased and essentially acted as a "prosecutor" against him. (Pet. ¶ 116.) He argues that the Attorney General purged pro-immigrant members from the BIA, and that the DHS atmosphere is such that no Board member could feel free to exercise truly independent discretion.  Petitioner submits the following as evidence: (1) newspaper articles and editorials discussing the purportedly chaotic result of the

---

[7]Indeed, rehabilitation was but one of numerous equities relied upon by the IJ in granting petitioner relief (see IJ Op. at 5-11) and the IJ herself expressed confusion over the disparity between what petitioner's sentencing documents seemed to require (i.e., psychological counseling) and what petitioner actually did or did not do (id. at 14).

Attorney General's reduction of the Board from twenty-three to eleven members, and suggesting the reduction may have been a "purge" of pro-immigrant officials; (2) federal regulations providing that the Attorney General may review Board decisions; (3) published opinions by the Attorney General overturning and criticizing Board decisions; and (4) press releases and the like from DHS' website promoting "Operation Predator" and other major initiatives.

Even assuming that all this "evidence" supports every single argument petitioner makes about the BIA as an adjudicatory body,[8] he fails to demonstrate violations of his due process rights. Specifically, the evidence is woefully insufficient as a matter of law to constitute judicial or administrative bias. See Liteky v. United States, 510 U.S. 540, 555 (1994) (describing the difficulty in establishing bias and citing Berger v. United States, 255 U.S. 22, 28 (1921), where a judge reportedly said to German parties, among other inflammatory things, "Your hearts are reeking with disloyalty," as an example of sufficient evidence of bias); Abdulrahman, 330 F.3d at 596-97 (rejecting as unfounded petitioner's claim that IJ acted as "witness" against him). Indeed, there is no evidence on the record that any of the perceived institutional bias alleged had any impact on the actual proceedings at issue. Petitioner succeeds only in pointing out some obvious realities of our republican form of government: that certain individuals, on the basis of (or in spite of) their particular views and ideas, are selected by the electorate to perform the republic's executive functions, and that these elected officials may in turn select those individuals they wish

---

[8]Although, the Court notes that the "purging" allegations have been officially denied by the relevant decision-makers, as shown in the very articles petitioner cites. See, e.g., Ricardo Alonso-Zaldivar & Jonathan Peterson, The Nation 5 on Immigration Board Asked to Leave; Critics Call It a 'Purge'; Justice Dept. Denies that the Move is a Bid to Oust Pro-Immigrant Officials from the Appeals Panel, L.A. Times, March 12, 2003, at A16 ("'There is no purge,' responded a Justice Department spokesman. The board is being reduced to 11 members at the end of this month as part of a previously announced streamlining plan, he added.").

to execute their designs and wishes, and so on down the line.  See, e.g., U.S. Const. art. II, § 2, cl. 2 (providing that "Congress may by law vest the appointment of such inferior officers ... in the heads of departments").  This Court has no power over the supposed ideologies of certain BIA members, and it may not police the appointment of those members.  See The Federalist No. 47 (James Madison) ("The judges can exercise no executive prerogative, though they are shoots from the executive stock.").  Had petitioner submitted any extra-judicial evidence that the Attorney General, DHS, or other relevant actors attempted to disregard constitutional, statutory, or regulatory law while overzealously implementing Operation Predator,[9] see Accardi, 347 U.S. at 264, 268, the situation may have been different.  But the allegations of bias as framed by petitioner's evidence and concomitant arguments raise questions of a purely political nature.  Petitioner's constitutional claims embodied in Count Four are thus denied.

This Court has, virtually since the time of petitioner's arrest,[10] closely identified the pathos of his circumstances.  Had it been sitting in place of the Board, the Court very well may have agreed with the IJ and granted petitioner the relief he requested.  Nevertheless, Congress, through its constitutional authority over both immigration and the jurisdictional reach of these district courts, and the Executive, through its properly granted and duly executed discretion, have spoken.  The Court is without power to issue the writ herein sought.

## CONCLUSION

---

[9]There is certainly no such evidence to be found in the Board's considered Opinion.

[10]This Court presided over petitioner's successful challenge to the circumstances of his bail.  See generally Ashley v. Ridge, 288 F. Supp. 2d 662 (D.N.J. 2003).

      For the reasons set forth above, the Court dismisses Counts Two and Three of petitioner's Petition for a writ of <u>habeas</u> <u>corpus</u> for lack of jurisdiction and denies Counts One and Four on the merits. An appropriate order will follow.


DATED: May 11, 2005                                                                <u>/s/ Jose L. Linares</u>
                                                                                              United States District Judge